Henry Williams, Appellant by Adam Rosner v. Illinois Workers' Compensation Comm'n et al., Terminal Getaway Spa, Appalee, by Marcy Singer Ruiz. Is it Rosner? Mr. Rosner? Mr. Rosner. Rosner. Okay. You may proceed. Thank you. Good afternoon, Your Honors. May it please the Court, Ms. Singer Ruiz, Adam Rosner, on behalf of the Plaintiff Appellant, Henry Williams. The issue I want to discuss today with Your Honors is whether the Commission erred in the amount of weight and when they determined subsection 5 of 820 ILCS 8.1b. This is the five factors that the Commission weighs to determine nature and extent of a workers' compensation injury. Admittedly, counsel cites to the Continental Tires case in their brief where this Court has found, you know, that it's in the Commission's place to weigh and to determine the factors, and they're given substantial deference in weighing and determining those factors. So this is a question of fact. It does manifest weight standard. So the only way that this Court could substitute its judgment is if the opposite conclusion is apparent, and I think that's the case here, and it's for two reasons. One, the Commission, in this case the arbitrator's decision under subsection 5, is contrary to the plain language of subsection 5. And the second reason is that the reasoning that the Commission gives is internally inconsistent. So starting with the plain language of subsection 5, subsection 5 is the evidence of disability corroborated by the treating medical records. And I would point you to page 8 to 9 of my brief where I cite to the Commission's decision under subsection 5 where it states the arbitrator, this is about six sentences down, where it states the arbitrator notes that a formal release from care for any claim to work conditionings with or without restrictions has not been given by Dr. Fink, but that Dr. Fernandez opined that petitioner to return to work as a massage therapist is at MMI to the 830.15 incomes. The plain language of subsection 5 is that it's evidence of disability corroborated by treating medical records. Dr. Fernandez is the IMU doc. He is an independent medical examiner. There is no doctor-patient relationship that is established between the plaintiff and Dr. Fernandez. So the subsection clearly states it's by the treating medical records. So it should be by the treating physicians, Dr. Fink or Dr. Gerber in this case. Secondly, what I mean by being internally inconsistent is that the Commission and the arbitrator relied upon, found that Dr. Fink and Dr. Gerber, who were the treating physicians, were more credible and persuasive on causation than Dr. Fernandez for this claim. And the reason that matters here is Dr. Fink and Dr. Gerber diagnosed plaintiff with a small indentation fracture of the left index finger, a ganglion cyst on the index finger, and then sprains of the middle and index finger. Dr. Fernandez's opinion was only that it was a middle finger sprain and a left index sprain. So when the Commission states that it's relying upon Dr. Fernandez's MMI date, which would be what she testified to during his deposition was the time of his first independent medical examination, which was February 18, 2016, that would be inconsistent with what the Commissioner found that Dr. Fink and Dr. Gerber were more credible on the causation being, which would entail the diagnosis of plaintiff. Plaintiff treated beyond the IME date of February 18, 2016, for his left index finger, for his middle finger, at the direction of Dr. Fink and Dr. Gerber. So essentially what the Commission is stating is that we're placing the plaintiff at MMI as of when Dr. Fernandez stated, despite saying he has diagnoses that are much beyond the finger sprains that Dr. Fernandez diagnosed plaintiff with. So in turn, this indicates that the reasoning behind the Commission's decision on subsection five is inconsistent in going full circle back to whether the opposite conclusion can be reefed so that your honors could substitute his judgment, I think it's clear. If the Commission had wrote that they're awarding the same permanent partial disability percentage, but that had relied upon Dr. Fink and Dr. Gerber's opinions of when a plaintiff had reached maximum medical improvement, which albeit there wasn't a specific date, there are dates when the plaintiff does transition from the index finger to the purple tunnel syndrome. But if the Commission had stated that in the reasoning for subsection five, it wouldn't be internally consistent. So with that, I am respectfully requesting this court to remand back to the Commission for further proceedings. Is it necessary, counsel, for those two things to be consistent? Your argument is obviously that it is, but is it? Yes, your honor, yes, Justice Kavanaugh. Because if the Commission relies upon Dr. Gerber's and Dr. Fink's diagnosis of the indentation fracture and the ganglion cyst, then the permanency could be higher. Because in this case, the Commission is relying upon Dr. Fernandez's maximum improvement date when he diagnosed plaintiff with a distinguished brain. Any other questions from the court? Mr. Rosner, you'll have time in reply. Thank you. Counselor Ruiz, you may respond. Good afternoon. May it please the court, counsel. My name is Marcy Ruiz. I represent Defendant Appley, terminal getaway spa in this matter. It's the contention of the defendant that the Commission's decision is supported by the manifest weight of the evidence and must be affirmed. There's no dispute as to accident. Defendants do not dispute the plaintiff suffered an injury to his left index finger when it was shut into a door at defendant's massage facility at O'Hare airport. The medical evidence revealed he underwent a left index finger surgery to exercise a mass at the top of his left index finger, and he also suffered a strain to his left middle finger. TTD, temporary total disability benefits and medical benefits were paid. The issue on plaintiff's heel is whether the Commission's decision basically awarding 25% of the index finger and five of the middle finger was against the manifest weight of the evidence. For reasons I will outline, the decision of the Commission is supported by the manifest weight of the evidence and must be affirmed. Commission decisions on questions of fact cannot be set aside unless they're contrary to the manifest weight of the evidence. Whether this court may reach the same conclusion is not the test of whether a Commission decision is supported by the manifest weight of the evidence. The correct test is whether there is sufficient evidence in the record to support the Commission's decision, and there is in this claim. The Commission in rendering the reward and assigning a percentage loss of use is required to follow the provisions as set forth in Section 1B of the Workers' Compensation Act. The Commission did so and followed Section 1B. Plaintiff agrees that the Commission used the proper section of the Act. Plaintiff takes issue with the Commission's reasoning when it applied the Section 1B factors and is asking this court to substitute its judgment for that of the Commission's, presumably to increase the award rendered to the plaintiff. But that's not the role of this court. It is well settled that because of the Commission's expertise in these matters, its findings on the extent of permanent partial disability should be given substantial deference. Section 1B of the Act requires the Commission to weigh all five factors and make a factual finding on each one. The Commission did so. The first factor is reported level of impairment. There was no impairment rating and the Commission gave zero weight to this factor. The second factor is occupation. They noted that plaintiff is a massage therapist and the Commission gave moderate weight to this factor. The third factor is age. Plaintiff was 47 years old and the Commission noted he had not returned to work at the time of the hearing. The Commission gave some weight to this factor. The fourth factor is future earning capacity and plaintiff did not establish a loss of future earnings, so little weight was given to that The final factor is evidence of disability corroborated by the treating medical records. Plaintiff appears to agree with the Commission's weighing again of factors one through four, but disagrees with the Commission giving greater weight to factor five. The Commission noted in their decision that the claimant suffered the left index finger ganglion cyst with an indentation fracture and a middle finger sprain. And relying on the treating doctor's opinions as to these conditions, the Commission gave greater weight to this factor and doing so found that the record supported claimant's alleged disability evaluation and percentage loss of use. A finding that the Commission gave too much weight to this factor could actually reduce the claimant's award. And even if this court agrees with plaintiff and therefore disagrees with what value or weight the Commission used on any one or even all of these factors, this does not justify or compel this court to second-guess the Commission's determination. It is within the province of the Commission to resolve conflicts in the evidence, assign the weight to be accorded the evidence, and draw reasonable inferences from the evidence. The Commission did all of this. Since the Commission decision in this claim is supported by the manifest weight of the evidence, it must be affirmed. Thank you. Questions from the court? Hearing none, thank you, counsel. Mr. Rosner, you may reply. Yes, thank you, Your Honor. My only reply to that would be that the, as I stated in my initial argument, is that only the opposite conclusion can be reached here. If the Commission had found that, which they did find that Dr. Gerber and Dr. Finkmore credible, relied upon their diagnoses, which were a much more significant injury than Dr. Fernandez diagnosed plaintiff with, then that must be what they rely upon when determining the evidence, the treating medical records, when rendering their opinions under subsection 5. So, again, for that reason, we respectfully request that the case be remanded for further proceedings. Thank you. Thank you. Questions from the court on this case? No? Okay, thank you. At this time, I know that our clerk informed you we'll move immediately to your second case. So, will the clerk for the record please call this second case?